UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                             Case No. 11-19665-EPK

GARY P. ELIOPOULOS,                                Chapter 7

              Debtor.
_____/

PAH CO.,

              Plaintiff,

v.                                                 Adv. No. 11-02657-EPK

GARY P. ELIOPOULOS,

              Defendant.

_____/

## NOTICE OF APPEAL

Plaintiff/Appellant, PAH Co., hereby appeals under 28 U.S.C. § 158(a) and Rules 8002 and

8003 of the Federal Rules of Bankruptcy Procedure, from the Court's Final Judgment [ECF

255/256[1]] and Memorandum Opinion [ECF 254] entered on June 26, 2015. This appeal is taken as

to the Final Judgment and any and all interlocutory order inherent in the Final Judgment, including

the Memorandum Opinion.  Copies of the Final Judgment and Memorandum Opinion are attached

as Composite Exhibit A.

The parties to the Order appealed from, and the names, addresses, and telephone numbers

of their respective counsel, are as follows:

---

[1]  The Final Judgment served ECF is stamped "Doc 256."  On the Court's electronic docket,
it shows up as "Doc 255."  Copies of both are attached.

## PART 1: IDENTIFY THE APPELLANT(S)

1. Name(s) of appellant(s):

     PAH Co.

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this

appeal:

**For appeals in an adversary proceeding.**      **For appeals in a bankruptcy case and not in an adversary proceeding.**

| | | | |
|---|---|---|---|
| ■ Plaintiff | ☐ Debtor |
| ☐ Defendant | ☐ Creditor |
| ☐ Other (describe) _____ | ☐ Trustee |
| | ☐ Other(describe) _____ |

## PART 2: IDENTIFY THE SUBJECT OF THIS APPEAL

1.    Describe the judgment, order, or decree appealed from:

     A Final Judgment [ECF 255/256] after trial, together with the Memorandum Opinion [ECF 254], both of which were entered by the Court on June 26, 2015.

2. State the date on which the judgment, order, or decree was entered: June 26, 2015.

Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: PAH Co.    Attorney:    L. Louis Mrachek, Esq.
                                  Florida Bar No. 182880
                                  Dawn L. Kelly, Esq.
                                  Florida Bar No. 0049388
                                  Mrachek, Fitzgerald, Rose,
                                  Konopka, Thomas & Weiss, Esq.
                                  505 South Flagler Drive, Suite 600
                                  West Palm Beach, FL 33401
                                  (561) 655-2250 - Telephone
                                  (561) 655-5537 - Facsimile

2. Party: Gary P. Eliopoulos   Attorney:   Philip J. Landau, Esq.
Patrick R. Dorsey, Esq.
Shraiberg, Ferrara & Landau, P.A.
2385 NW Executive Center Drive, Suite 300
Boca Raton, FL. 33431
(561) 443-0800 - Telephone
(561) 998-0047 - Fax

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rules 2090-1(A) and 9011-4(A)(1)

MRACHEK, FITZGERALD, ROSE,
    KONOPKA, THOMAS & WEISS, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
Telephone:    (561) 655-2250
Facsimile:    (561) 655-5537
email: lmrachek@mrachek-law.com
e-mail: dkelly@mrachek-law.com
Attorneys for PAH Co.

By:    */s/ L. Louis Mrachek*  _____
Louis L. Mrachek - Florida Bar No. 182880
Dawn M. Kelly - Florida Bar No. 0049388

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document has been served this 10th day of July, 2015, on all persons identified on the attached Service List and all interested parties on the court matrix in the manner indicated.

*s/ L. Louis Mrachek*  _____
L. Louis Mrachek

# Mailing Information for Case 11-02657-EPK

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Patrick R Dorsey**    pdorsey@sfl-pa.com, vchapkin@sfl-pa.com;dwoodall@sfl-pa.com;scusack@sfl-pa.com;ddeluca@sfl-pa.com
- **Dawn Marie Kelly**    dkelly@mrachek-law.com, tclarke@mrachek-law.com;cklein@mrachek-law.com
- **Philip J Landau**    plandau@sfl-pa.com, lrosetto@sfl-pa.com;blee@sfl-pa.com;pdorsey@sfl-pa.com;scusack@sfl-pa.com;dwoodall@sfl-pa.com;ddeluca@sfl-pa.com
- **Lorin Louis Mrachek**    lmrachek@pm-law.com, cklein@pm-law.com;mchandler@pm-law.com;dkelly@mrachek-law.com;blewter@mrachek-law.com;tclarke@mrachek-law.com
- **Harry J Ross**    hross@hjrlaw.com, jerri@hjrlaw.com
- **Jesse Stellato**    jesse.stellato@gmail.com, dacpa2@bellsouth.net

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

> **Robert C Furr**
> Furr and Cohen PA
> One Boca Place, Suite 337W
> 2255 Glades Road
> Boca Raton, FL 33431

> **Gregg H Glickstein**
> 54 SW Boca Raton Blvd
> Boca Raton, FL 33432

> **Trent J. Swift**
> 700 S Olive Ave

West Palm Beach, FL 33401

## **Creditor List**

Click the link above to produce a complete list of **creditors** only.

## **List of Creditors**

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.



**ORDERED in the Southern District of Florida on June 26, 2015.**



Erik P. Kimball, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                          CASE NO.: 11-19665-EPK
                                                Chapter 7
GARY P. ELIOPOULOS,

    Debtor.
_____/

PAH CO.,

    Plaintiff,

v.                                              ADV. CASE NO.: 11-02657-EPK

GARY P. ELIOPOULOS,

    Defendant.
_____/

<u>FINAL JUDGMENT</u>

THIS MATTER came before the Court for trial on January 6, January 7, March 14,

March 17, and March 18, 2014, upon the *Complaint Objecting to Discharge Under 11 U.S.C.*

*§ 727, or, in the Alternative, to Determine Dischargeability of Debt Under 11 U.S.C. § 523*

1 of 2



EXHIBIT
Composite
A

[ECF No. 1] (the "Complaint") filed by PAH Co. ("PAH") against Gary P. Eliopoulos ("the Defendant").

Consistent with the *Memorandum Opinion* entered contemporaneously herewith, and pursuant to the provisions of Fed. R. Bankr. P. 7058, the Court finds in favor of the Defendant in all respects.

Accordingly, it is ORDERED AND ADJUDGED that Final Judgment is entered in favor of the Defendant, and all relief requested by the Plaintiff in the Complaint [ECF No. 1] is DENIED.

### 

Copies Furnished to:

All parties of record by the Clerk.



**ORDERED in the Southern District of Florida on June 26, 2015.**



Erik P. Kimball, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                     CASE NO.: 11-19665-EPK
                                           Chapter 7
GARY P. ELIOPOULOS,

    Debtor.

_____/

PAH CO.,

    Plaintiff,

v.                                         ADV. CASE NO.: 11-02657-EPK

GARY P. ELIOPOULOS,

    Defendant.

_____/

### FINAL JUDGMENT

    THIS MATTER came before the Court for trial on January 6, January 7, March 14,

March 17, and March 18, 2014, upon the *Complaint Objecting to Discharge Under 11 U.S.C.*

*§ 727, or, in the Alternative, to Determine Dischargeability of Debt Under 11 U.S.C. § 523*

[ECF No. 1] (the "Complaint") filed by PAH Co. ("PAH") against Gary P. Eliopoulos ("the Defendant").

Consistent with the *Memorandum Opinion* entered contemporaneously herewith, and pursuant to the provisions of Fed. R. Bankr. P. 7058, the Court finds in favor of the Defendant in all respects.

Accordingly, it is ORDERED AND ADJUDGED that Final Judgment is entered in favor of the Defendant, and all relief requested by the Plaintiff in the Complaint [ECF No. 1] is DENIED.

### 

Copies Furnished to:

All parties of record by the Clerk.

Form CGFD62  (9/19/08)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number:** 11–19665–EPK                    **Adversary Number:** 11–02657–EPK

In re:

**Name of Debtor(s):** Gary P Eliopoulos

––––––––––––––––––––––––––––––––––––––––––––––––/

**PAH Co.**

Plaintiff(s)

**VS.**

**Gary P Eliopoulos**

Defendant(s)

––––––––––––––––––––––––––––––––––––––––––––––––/


## NOTICE OF ENTRY ON DOCKET OF JUDGMENT/ORDER


Notice is hereby provided pursuant to Bankruptcy Rule 9022 that the Judgment/Order titled  **Final Judgment** (copy attached) was entered on the docket on  **6/26/15** .


Dated: **6/26/15**                          **CLERK OF COURT**
                                            By: Lorraine Adam
                                            Deputy Clerk (561) 514–4100


The clerk shall serve a copy of this notice on all interested parties.



**ORDERED in the Southern District of Florida on June 26, 2015.**



Erik P. Kimball, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                       CASE NO.: 11-19665-EPK
                                                             Chapter 7
GARY P. ELIOPOULOS,

     Debtor.
_____/

PAH CO.,

     Plaintiff,

v.                                                           ADV. CASE NO.: 11-02657-EPK

GARY P. ELIOPOULOS,

     Defendant.
_____/

<u>MEMORANDUM OPINION</u>

     THIS MATTER came before the Court for trial on January 6, January 7, March 14,

March 17, and March 18, 2014,[1] upon the *Complaint Objecting to Discharge Under 11*

---

[1] Final ruling in this adversary proceeding has been significantly delayed by litigation in the above-captioned main bankruptcy case. In post-trial briefing, the plaintiff waived its claims under 11 U.S.C. § 523, leaving only denial of

*U.S.C. § 727, or, in the Alternative, to Determine Dischargeability of Debt Under 11 U.S.C. § 523* [ECF No. 1] (the "Complaint") filed by PAH Co. ("PAH") against Gary P. Eliopoulos. In this Memorandum Opinion the Court presents its findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052.

PAH presents six counts in its Complaint: Count I for denial of discharge under section 727(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*; Count II for denial of discharge under section 727(a)(7); and Counts III through VI for exception from discharge under section 523(a)(6) based on fraud in the inducement, intentional interference, conspiracy and intentional breach of the Florida Building Code. PAH has the burden of proof on all matters by a preponderance of the evidence. *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008) (quoting *Grogan v. Garner*, 498 U.S. 279 (1991)).

PAH elected not to address Counts III through VI in its post-trial brief. *Plaintiff's Notice of Filing Memorandum Opinion Incorporating Findings of Fact and Conclusions of Law*, ECF 205. Those Counts are, therefore, deemed withdrawn and will not be addressed herein. The Court here rules on Counts I and II of the Complaint, in which PAH seeks complete denial of the discharge.

The Court considered the testimony of witnesses and the documentary evidence admitted at trial in this adversary proceeding, the pretrial order containing certain stipulated facts, this Court's *Order Denying Plaintiff's Motion for Summary Judgment*

---

discharge claims under 11 U.S.C. § 727. Then the defendant filed a motion to convert his chapter 7 case to a chapter 11, which would have mooted the remainder of the relief requested here. The Court set a hearing on the motion to convert, but then the plaintiff filed a motion to disqualify counsel for the defendant. The Court determined to delay ruling on the motion to convert until after ruling on the motion to disqualify. Because two former law clerks for the judge assigned to this case would be required to testify in the matter, the motion to disqualify was transferred to another judge for consideration. It was later denied. Then the Court again set the motion to convert for hearing, after which the defendant withdrew the motion to convert. At long last, this adversary proceeding is ripe for decision.

[ECF No. 135], and the post-trial briefs filed by the parties in the form of proposed findings of fact and conclusions of law.

For the reasons stated more fully below, the Court will enter judgment in favor of Mr. Eliopoulos on all counts of the Complaint.

I.    FINDINGS OF FACT

Mr. Eliopoulos's Professional Background

Mr. Eliopoulos is an architect licensed to do business in the State of Florida and elsewhere. Mr. Eliopoulos has worked for a series of different architecture firms. In 1997, he formed and began working for the firm of Eliopoulos & Associates, Inc. Eliopoulos & Associates, Inc. changed its name to Eliopoulos Architecture, Inc. ("EA") in 2002. At all relevant times, Mr. Eliopoulos was the president of EA and owned 49% of the equity in the company. His wife, Alison "Toni" Eliopoulos, was the vice president of EA and owned 51% of the equity in the company.

As its principal architect, Mr. Eliopoulos was solely responsible for the generation of revenue for EA. EA did not advertise. Clients generally approached the firm via personal referrals to Mr. Eliopoulos. The value of the firm and its services lay in the labor, expertise, and reputation of Mr. Eliopoulos. In addition to Mr. Eliopoulos and other architectural staff, EA employed Alison Eliopoulos and Linda Hamilton for accounting, bookkeeping, and general administrative tasks.

At various times since 1997, Mr. Eliopoulos has been employed by other entities as well. In 2002, Mr. Eliopoulos and Rustem Kupi formed Kupi & Eliopoulos Architects, P.A. ("K&E") as a speculative real estate and architectural venture. Mr. Eliopoulos is the vice president of K&E and owns 50% of the equity in that entity. Mr. Eliopoulos also worked as a city commissioner in the late 2000s.

In the years immediately preceding the filing of his chapter 7 petition here, Mr. Eliopoulos derived the bulk of his income from EA. EA generated total gross revenue of close to a million dollars during 2009-2010, paying somewhat less than half that amount to Mr. Eliopoulos as wages.

**PAH Litigation**

In 2000, PAH purchased the historic Leh-O-Mar building at 700 South Olive Avenue in West Palm Beach, Florida. PAH contracted with Europa Building Associates, Inc. ("Europa"), a general contractor, to modify the building. PAH retained EA to provide architectural services for the project. In December, 2001, Europa sued PAH over contract disputes and to foreclose on a claim of lien. PAH counter-sued Europa, and also sued both EA and Mr. Eliopoulos for professional negligence. In its proof of claim in this chapter 7 case, PAH alleges damages against Mr. Eliopoulos in excess of $641,000.

The Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida scheduled trial to begin in May of 2011. On April 11 and 13, 2011, respectively, Mr. Eliopoulos and EA filed voluntary chapter 7 petitions in this Court. As a result of the imposition of the automatic stay here, the state court trial did not proceed. PAH holds claims against both Mr. Eliopoulos and EA based on its allegations in the state court action.

**GE Architecture, Inc.**

In November 2009, Gary and Alison Eliopoulos formed a new corporation, GE Architecture, Inc. ("GE"). Unlike EA, GE is owned solely by Alison Eliopoulos. Mr. Eliopoulos serves as vice president of the corporation. He has not held an equity stake in GE at any relevant time.

The timing of GE's formation, in light of other circumstantial evidence and credible testimony, suggests that Mr. Eliopoulos intended to transfer his own productive energy from EA to GE. Mr. Eliopoulos had no interest in laboring to generate revenue for EA that

PAH might ultimately collect.  Accordingly, Mr. Eliopoulos stopped accepting new work for EA.  Certain former clients of EA later retained GE for new projects.  However, neither Mr. Eliopoulos nor EA transferred any existing contract or account receivable from EA to GE.  All work contracted for with EA was completed by EA and all accounts held by EA were collected by EA.

At some time after February 2011, GE began using and took ownership of a small amount of personal property previously owned by EA, for no consideration.  GE obtained certain tangible assets, including a telephone system, six computers, one fax machine, seven desk chairs, and some architectural reference books.  GE also obtained some intangible assets, such as electronic data and the use of the office phone number previously used by EA.[2]

There is no record of a transfer of such assets from EA to GE nor a contemporaneous record of their value.  In its own bankruptcy schedules, EA valued the tangible assets at several hundred dollars in the aggregate.  That estimate appears reasonable and, in any case, is not rebutted.

### Auto-related Transfers

In February 2010, Alison Eliopoulos purchased a 2010 Volkswagen automobile for $28,123.48.  Mr. Eliopoulos made use of and apparently continues to make use of this vehicle.  Within the year prior to the bankruptcy filings, EA made a total of $5,069.90 in payments on account of the Volkswagen.  Mr. Eliopoulos testified credibly that he had no recollection of which entity or individual made payments on the car.

---

[2] PAH also alleges that GE obtained "employees" and "goodwill" from EA.  The evidence does not suggest that the employees were bound by contract or otherwise capable of being "transferred" by EA to GE.  The alleged transfer of "goodwill" is discussed more fully in the Court's conclusions of law below.

At some point, EA transferred title of a 2004 Volvo to Alison Eliopoulos. Gary and Alison Eliopoulos testified that the transfer occurred in 2009, and in deposition cited a certificate of title issued in September of 2009. PAH claims that the transfer occurred in 2011, eight days before EA filed its bankruptcy petition. To that effect, PAH cites EA's 2010 and 2011 federal tax returns listing the Volvo as an asset, as well as the fact that EA made at least one payment on the Volvo on behalf of Alison Eliopoulos in 2011. Based on the credible testimony of Gary and Alison Eliopoulos and the referenced contemporaneous certificate of title, it appears that EA's federal tax returns were in error and the transfer of the Volvo took place in 2009.

Building Sale Proceeds

Prior to filing its bankruptcy petition, EA owned an office building at 205 George Bush Boulevard, Delray Beach, Florida. In January, 2011, EA sold the building to a third party for $305,000, receiving $71,000 in net sale proceeds. In the three months before filing its bankruptcy petition, EA dispersed the entirety of the net proceeds.

EA paid out $15,000 of the proceeds to Alison Eliopoulos. Mr. Eliopoulos testified credibly that he had no role in the writing of the check because Alison Eliopoulos and Linda Hamilton took responsibility for issuing checks from EA's account. Mr. Eliopoulos maintained that, at that time, he had been performing work for EA to finish its remaining contracts. He had not, however, been compensated by EA in several months. Accordingly, to his knowledge, the $15,000 represented overdue wages payable to him. The $15,000 check was deposited in the joint checking account of Gary and Alison Eliopoulos and apparently used for their living expenses.

EA also paid out a large amount of the sale proceeds to legal counsel. At that time, EA and Mr. Eliopoulos owed money to Gregg Glickstein in connection with the Europa litigation and to Harry Ross in connection with their imminent bankruptcy cases. It

appears that Mr. Glickstein and Mr. Ross represented the parties jointly in their respective engagements.

Loans to K&E

For some time prior to its bankruptcy filing, EA made periodic loans to K&E to enable K&E to make mortgage payments on its investment properties. From the evidence, it is impossible to determine the exact amount of such loans. In the year prior to the filing, EA loaned K&E between $4,500 and $18,307 for that purpose. Mr. Eliopoulos believed that K&E's holdings had some value and that he had a moral obligation to assist K&E in paying its obligations on the investment properties. During the same twelve month period, K&E also repaid various prior loans from EA totaling some $15,000. It appears likely that loan repayments made by K&E to EA completely or nearly completely offset new loans made by EA to K&E during the year prior to Mr. Eliopoulos and EA filing their bankruptcy petitions.

II.    CONCLUSIONS OF LAW

Because the denial of a debtor's discharge "imposes an extreme penalty for wrongdoing," section 727 "must be construed strictly against those who object to a debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (quotation omitted).

Count I

In Count I, PAH seeks denial of discharge in this chapter 7 case pursuant to section 727(a)(2)(A). That section provides that a debtor shall be granted a discharge unless:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of the filing of the petition . . .

In other words, to obtain relief under Count I of the Complaint, PAH must prove (1) intent to hinder, delay or defraud, (2) a creditor or officer of the estate, (3) by transferring, removing, destroying, mutilating or concealing, (4) property of the Debtor, (5) within one year before the Petition Date. *In re Kane*, 470 B.R. 902, 931 (Bankr. S.D. Fla. 2012).

PAH's sole argument under Count I is that Mr. Eliopoulos's actions constitute a destruction or transfer of his 49% equity interest in EA. This argument is patently contrary to the text of the statute.

The term "destroy" in section 727(a)(2) is not defined in the Bankruptcy Code. The plain meaning of the word connotes physical destruction, as of a tangible object. Courts have long interpreted the term "destroy" in this context to refer to the physical destruction of property and records by desperate or vindictive debtors. *See First Midwest Bank v. Beeler*, 2009 WL 363907, *13 (Bankr. D. S.D. 2009); *see also* William Faulkner, *Barn Burning*, Selected Short Stories of William Faulkner 1-25 (Modern Library 1993) (illustrating archetypal debtor behavior). Mr. Eliopoulos's 49% stake in EA was not a tangible asset. He could not and did not "destroy" it as that term is used in the case law.

Nor did Mr. Eliopoulos "transfer" his 49% equity interest in EA as argued by PAH. PAH alleges only that Mr. Eliopoulos orchestrated the transfer to GE of assets belonging to EA. The assets PAH points to were not assets of Mr. Eliopoulos. PAH does not allege, much less prove, an *alter ego* theory by which EA's property might be treated as Mr. Eliopoulos's property under the law. PAH does not allege any transfer of Mr. Eliopoulos's 49% equity stake in EA. Indeed, Mr. Eliopoulos still owned his equity interest in EA at the time he filed his chapter 7 petition.

Mr. Eliopoulos did not transfer, remove, destroy, mutilate, or conceal his own property as contemplated by section 727(a)(2). Accordingly, the Court will deny the relief requested in Count I of the Complaint.

### Count II

In Count II, PAH seeks denial of discharge in this chapter 7 case pursuant to section 727(a)(7). That section provides that a debtor shall be granted a discharge unless:

> the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

In this case, PAH argues that Mr. Eliopoulos's actions in connection with property of EA, also a debtor before this Court, would violate section 727(a)(2)(A), and thus merit denial of Mr. Eliopoulos's discharge under section 727(a)(7).

In connection with Count II, PAH points to several categories of alleged pre-petition transfers. These include (1) the transfer of office equipment and alleged transfer of goodwill from EA to GE, (2) payment of loan installments by EA on the Volkswagen used by Mr. Eliopoulos, (3) the transfer of title to the Volvo used by Alison Eliopoulos from EA to Alison Eliopoulos, (4) the distribution of certain building sale proceeds to Mr. Eliopoulos, and (5) EA's making of certain loans to K&E. Under section 727(a)(7), among other things, PAH must show that Mr. Eliopoulos committed the acts in question.

### Business Assets and Goodwill

It appears that GE was formed so that Mr. Eliopoulos might practice his trade without generating assets that could eventually go to PAH, were PAH to succeed against EA in state court. Nothing in the law prohibits Mr. Eliopoulos from doing this. Indeed, PAH cannot force, and the law does not require, Mr. Eliopoulos to labor on behalf of a corporation that is a potential judgment debtor.

There are two questions before the Court. First, does Mr. Eliopoulos's cessation of work for EA and commencement of work at GE, in the same location, with the same minimal office equipment and the same office staff, and in some cases for clients that formerly retained EA, constitute the transfer of the goodwill of EA to GE and, if so, did Mr. Eliopoulos cause that transfer with the requisite intent to hinder, delay or defraud PAH? Second, when Mr. Eliopoulos caused GE to take control and ownership of minimal office equipment and related intangible assets of EA did he do so with the requisite intent to hinder, delay or defraud PAH? With regard to the goodwill of EA, the Court finds that there was no transfer within the meaning of that term in section 727(a)(2) and so no violation of section 727(a)(7). Even if the Court was to determine that the goodwill of EA was somehow transferred to GE, the Court finds that Mr. Eliopoulos did not act with the intent to hinder, delay, or defraud PAH as required by section 727(a)(7). Likewise, with regard to the minimal tangible and other intangible assets of EA, the Court finds that Mr. Eliopoulos did not act with the intent to hinder, delay, or defraud PAH as required by section 727(a)(7).

Several courts have addressed the alleged transfer of the goodwill of a business under circumstances similar to those here. In *In re Watman*, in 2002, the Court of Appeals for the First Circuit found that a transfer of business assets sufficed for denial of discharge:

> Watman "used [about $42,000 of] Childrens Dental's funds to prepay expenses that he knew he or a new corporation would incur." Watman transferred these assets identified by the bankruptcy court precisely because they had value. If Watman had walked away from Childrens Dental, he would have had to expend resources to find a new location for his practice, buy new equipment, hire new employees, find new patients or encourage his old patients to follow him despite changes in location and employees, and develop new patient records or enter into some arrangement to get the old records. Instead, Watman simply transferred by possession these assets of Childrens Dental to Lowell Dentistry.

458 F.3d 26, 33 (internal quotation from bankruptcy court finding).  In contrast, in *In re Bukowski*, a Wisconsin bankruptcy court concluded that an alleged transfer of goodwill was not sufficient for denial of discharge where an investment manager took his own clients to a similarly named new business, noting that "Mr. Bukowski has sought to continue in his chosen profession, that of investment manager . . . the clients followed him because of their relationship with him, not with Alpha I."  1999 WL 33581617, *11 (Bankr. W.D. Wisc. 1999).

The most pertinent facts in *Watman* are not present here.  Mr. Eliopoulos did not prepay tens of thousands of dollars of EA expenses to save GE an equivalent amount.  In *Watman*, it appears that the debtor simply continued the same pediatric dental practice under a new name without separating their finances.  Here, it is undisputed that EA completed work on its existing contracts and collected all of its own accounts receivable.  The minimal office equipment and related intangibles used by EA and then by GE are not nearly as specialized nor as expensive and difficult to obtain as those of a pediatric dentist.  The practice of a pediatric dentist is physically difficult to move.  Mr. Eliopoulos's architectural practice could be accomplished in nearly any office suite or even in a home.

*Watman* was a case in which an individual professional transferred significant assets from one company to another, including using funds of the first entity to prepay expenses for the obvious benefit of the second, on the eve of bankruptcy in order to evade a creditor with a final judgment.  The goodwill "transferred" in that case, to the extent it can be considered a transfer, was tightly bound to the substantial tangible and intangible assets that were actually transferred from one corporate entity to another.  *Watman* does not stand for the proposition that the defendant professional harmed his judgment creditor simply by choosing to deliver his professional services through a different corporate entity.

As the Wisconsin court found in *Bukowski*, Mr. Eliopoulos's decision to work for GE did not involve a "transfer" of any kind. The value of Mr. Eliopoulos's labor lay in his expertise and in his personal relationships with clients. After Mr. Eliopoulos decided to lend his labors to a new corporate employer, EA had effectively no goodwill or going concern value that might be transferred. There was no "transfer" of goodwill or going concern value. The value of one entity waned and the value of another grew based on Mr. Eliopoulos's involvement. Indeed, to rule that Mr. Eliopoulos effectuated a "transfer" of goodwill by ceasing to provide professional services to EA and commencing professional services with GE would require the Court to view the personal services of Mr. Eliopoulos as property of EA subject to transfer within the meaning of section 727(a)(2). *See* 11 U.S.C. § 101(54)(D) (defining "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with— (i) property; or (ii) an interest in property). In order to avoid such a transfer, Mr. Eliopoulos would be required to continue to labor for EA for the potential benefit of PAH. This is tantamount to personal servitude and runs afoul of the Thirteenth Amendment to the United States Constitution.

Mr. Eliopoulos did in fact cause EA to give some tangible assets to GE. Of these assets, only the office equipment and supplies had cognizable value although quite limited. Section 727(a)(2) contains no *de minimis* exception, and so a dishonest debtor may lose her discharge even where the assets in question have limited value. Nevertheless, the Court may look to the value of the assets transferred in determining whether the debtor was indeed dishonest. *See In re Feynman*, 77 F.2d 320, 322 (2d Cir.1935) (once dishonesty is shown, value of assets transferred is not material); *cf. In re Gollomp*, 198 B.R. 433, 438 (Bankr. S.D. N.Y. 1996); *In re Arcuri*, 116 B.R. 873, 881 (Bankr. S.D. N.Y. 1990) ("[i]f the false oath pertains to an asset of *de minimis* value, however, this may tend to vitiate the

debtor's fraudulent intent"). To argue that the insignificant hard assets and related intangibles obtained by GE should materially change the Court's analysis here is a classic example of the tail wagging the dog. There is no evidence to support the conclusion that Mr. Eliopoulos believed that GE's use of such assets had any impact on PAH whatsoever. Indeed, a portion of the same office equipment was soon replaced by GE. Mr. Eliopoulos did not act with the requisite intent to hinder, delay, or defraud PAH. *See Bukowski*, 1999 WL 33581617 at *11; *In re Benevento*, 2012 WL 3475163, *8-11 (Bankr. S. D. Fla. 2012) (discussing 727(a)(2)(A) case law and standard).

### Auto-related Transfers

The evidence does not support relief under Count II with regard to EA's payment on the Volvo and Volkswagen car loans, or its transfer of the Volvo to Alison Eliopoulos. With regard to the Volvo, the transfer took place prior to one year before the bankruptcy petition and thus cannot be the basis for denial of discharge. In addition, with regard to all of these matters, PAH did not meet its burden to prove that Mr. Eliopoulos himself was responsible for those transfers. Even if Mr. Eliopoulos was involved in any of these actions, the evidence as a whole would not cause the Court to conclude that these actions were undertaken with the requisite intent to hinder, delay, or defraud PAH.

There is no evidence that Mr. Eliopoulos directed the payment on the vehicle loans or the transfer of the Volvo. Alison Eliopoulos was at all relevant times the majority equity owner of EA. Credible testimony, unrebutted by PAH, indicates that Alison Eliopoulos and Linda Hamilton handled all of EA's bookkeeping, accounting, and administrative tasks. Alison Eliopoulos was responsible for issuing checks both from EA's bank account and from the couple's joint bank account. It appears that she was solely responsible for causing EA to make payments on the vehicle loans and for transferring title to the Volvo from EA to herself. Mr. Eliopoulos testified credibly that he had no recollection which individual or

entity made payments on the Volvo and the Volkswagen. Based on the evidence admitted here, Mr. Eliopoulos did not initiate any of the payments and did not cause the transfer of title to the Volvo.

Even if Mr. Eliopoulos was responsible for the vehicle-related payments and transfer, the Court would not deny discharge on this basis. The combined value of the transfers appears to be less than $10,000. Mr. Eliopoulos was a professional architect with a strong book of business, bringing in half a million dollars in revenue in good years. He could appropriately have directed EA to pay him an extra several thousand dollars in salary and then paid for the cars from that surplus. There is nothing in the evidence to cause the Court to believe the auto-related transfers were aimed at PAH, and so the Court could not conclude that there was any intent to hinder, delay, or defraud PAH.

Building Sale Proceeds

EA issued a check in the amount of $15,000 to Alison Eliopoulos. This sum was part of the net proceeds from the sale of the building formerly owned by EA. Mr. Eliopoulos acknowledges that this amount represented back pay owed to him by EA. The fact that the check was issued in the name of Alison Eliopoulos does not indicate a wrongful intent. Even if the check had been issued in the name of Mr. Eliopoulos its destination would have been the same – the joint checking account of Gary and Alison Eliopoulos. The evidence in this regard does not indicate an intent to hinder, delay, or defraud anyone. Likewise, there is nothing suspicious about EA's use of other net proceeds from the building sale to pay its counsel, other creditors, and employees.

K&E Loans

The Court finds that the loans made by EA to K&E within one year of the petition date were not made with the intent to hinder, defraud, or delay PAH or other creditors.

Whether those loans aggregated $4,500 or $18,307 makes no difference. The money was loaned in good faith and for a purpose wholly distinct from any pending litigation.

K&E was an investment vehicle that owned real property. In the year before EA's bankruptcy filing, the real property was under water. Nevertheless, Mr. Eliopoulos considered K&E's assets to be a worthy investment and believed he had an obligation to assist K&E in keeping current the mortgage payments on its properties. As he frequently had in the past, he accomplished his share of the payments via loans from EA. Mr. Eliopoulos had no reason to believe that the loans to K&E would become uncollectible. The record shows that K&E had at various times repaid loans to EA, including substantial repayments during the same year prior to EA filing its bankruptcy petition. The credible evidence on this issue indicates no intent to hinder, delay, or defraud PAH.

**Totality of the Circumstances**

Lastly, PAH argues that the Court should consider all of the transfers and other actions discussed above, and perhaps even activity that allegedly took place more than a year prior to the bankruptcy filings here, apparently with a jaundiced eye, and conclude that Mr. Eliopoulos has generally been dishonest. Under the law, it is not clear how this umbrella argument might be used to threaten Mr. Eliopoulos's discharge. The Court's power to deny discharge is defined exclusively by section 727, and the Court has addressed each of the specific allegations made by PAH under the relevant provisions of the statute. In any case, the Debtor was a credible witness and his testimony was consistent with the documentary evidence admitted at trial. The greater weight of the evidence supports the conclusion that Mr. Eliopoulos did not violate any provision of section 727.

Even if there is some theory under which the Court may overlook the failure to prove individual instances of conduct that satisfy a provision of section 727 and somehow deny a debtor's discharge based on an overall conclusion of bad intent, the Court would not do so

here. The pre-petition transactions argued by PAH aggregate, at most, about $25,000. No matter how the transfers and payments were accomplished, it does not appear any of this would have been available to PAH as a potential judgment creditor of EA or Mr. Eliopoulos. More importantly, there is no evidence that Mr. Eliopoulos believed he was somehow shielding these sums from PAH. The requisite intent was lacking.

In fact, the totality of the circumstances in this case paint a picture entirely more favorable to Mr. Eliopoulos. During the trial, the presentation of PAH's now-abandoned claims under section 523 provided the Court with a disturbing picture of the pre-bankruptcy litigation between the parties.

PAH has been suing Mr. Eliopoulos for the better part of a decade. Its substantive claims against him, as related to the Leh-O-Mar building, do not appear to have merit. Even when PAH sought judgment under section 523, it did not ask this Court to liquidate the debt that it asked to have excepted from discharge. Instead, PAH requested an order from this Court that its claims against Mr. Eliopoulos, as later determined by a Florida state court, would not be discharged in Mr. Eliopoulos's bankruptcy case. This is not unusual, as the state court action involves defendants other than Mr. Eliopoulos and asking this Court to liquidate the underlying debt might have required PAH to present that portion of its case twice. Nevertheless, in its presentation of claims under section 523, PAH needed to show the Court that there was in fact a debt that could be excepted from discharge and so it presented evidence generally on the existence of the claims. That evidence was severely lacking. To put it plainly, PAH is tilting at windmills.[3]

---

[3] As the Court commented during trial, the evidence suggests that PAH's primary witness, who was responsible for overseeing rehabilitation of the Leh-O-Mar building, failed to provide appropriate direction to Europa and EA, failed to properly monitor the building permit process for an extended period of months, later realized that the building permit as issued would not be to her employer's liking, and sought to blame Europa, EA and Mr. Eliopoulos for her own shortcomings.

In spite of the weakness of its claims, PAH continues to act with extreme aggression toward Mr. Eliopoulos. The principal of PAH and certain of its counsel have been admonished by this Court for disrespectful and potentially unethical behavior. *Order Denying Verified Motion to Disqualify the Law Firm of Shraiberg, Ferrara & Landau, P.A.*, Case No. 11-19665-EPK, ECF No. 324 (Olson, J.) (incorporating statements on the record describing the testimony of PAH's principal as "implausible and incredible" and describing PAH's litigation tactics as "a fool's errand" and "a deliberate attempt . . . to disrupt and derail the bankruptcy proceeding"). PAH's scorched earth approach in the state court and here has cost Mr. Eliopoulos a considerable amount of money as he is forced to respond. It is apparent that PAH desires to crush Mr. Eliopoulos with litigation, whether or not PAH can ultimately win on the merits of any of its claims.

In sum, Mr. Eliopoulos did not, by any particular action, or even by his actions in the aggregate if this could be the basis for relief, cause EA to transfer, remove, destroy, mutilate, or conceal its property as contemplated by sections 727(a)(2) and 727(a)(7). Accordingly, the Court will deny the relief requested in Count II of the Complaint.

## III. CONCLUSION

For the foregoing reasons, and being fully advised in the premises, the Court denies all relief in this adversary proceeding. The Court will enter judgment in favor of the defendant, Gary P. Eliopoulos.

###

Copies Furnished to:

All parties of record by the Clerk.